UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

SYLVIA BROWN COUVILLION,  CIVIL ACTION NO. 12-204-SDD-RLB
INDIVIDUALLY AND AS THE
TESTAMENTARY EXECUTRIX OF
THE SUCCESSION OF JOHN C.
COUVILLION

v.

REDDY ICE CORPORATION, ET AL.

### ORDER

This matter is before the court on Plaintiff's Motion to Modify ERISA Case Order to Permit Limited Discovery.[1] The motion is opposed.[2]

### FACTS & PROCEDURAL BACKGROUND

Plaintiff is the designated beneficiary of a group life insurance policy provided to her late husband, John Couvillion, through the Reddy Ice Group, Inc. life insurance plan (the "Plan").[3] The parties do not dispute that the Plan is governed by the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. § 1001 *et seq.* ("ERISA"). Plaintiff has brought this suit against Mr. Couvillion's former employer, Reddy Ice Corporation ("Reddy Ice"), and the Plan's claims administrator, Metropolitan Life Insurance Company ("MetLife").[4] The underlying dispute concerns whether Plaintiff is entitled to receive a death benefit of $148,000 from the Plan as a result of Mr. Couvillion's death on July 12, 2011.

---

[1] Rec. Doc. 18.
[2] Rec. Doc. 21.
[3] The Plan is located in the administrative record, Rec. Doc. 7-2, at 1-79 (M-0001 to M-0079).
[4] Rec. Doc. 1, Complaint.

The facts leading up to MetLife's denial of coverage are relevant for deciding the instant motions before the court. On May 13, 2011, Reddy Ice notified Mr. Couvillion that his short-term disability (STD) benefits would expire on June 5, 2011.[5] In that letter, Reddy Ice informed Mr. Couvillion that he had "basic life insurance coverage in the amount of $148,000" and that he would "need to convert this coverage to a personal policy and begin the premium payments." The letter also informed Mr. Couvillion that he might "qualify for waiver of premium of the life insurance" while he continued to be disabled.

Attached to the letter was a form entitled "Conversion of Group Life Benefits to an Individual Policy."[6] The attached conversion of benefits form appears to be signed and dated by the same Reddy Ice representative who signed the May 13, 2011 letter. The conversion of benefits form provides two handwritten dates: (1) June 5, 2011 for the "Date of this notice" and (2) June 30, 2011 as the "termination" Mr. Couvillion's group life insurance benefits. The form further provides that conversion of the group life insurance policy into an individual policy could be made, upon application and payment of premium, within "31 days from the date benefits were terminated."

Plaintiff alleges that when she contacted MetLife to initiate the conversion process on June 6, 2011, she was put in touch with a MetLife financial services representative named Bonnie Leerkes.[7] Plaintiff alleges that she and her family members met with Ms. Leerkes on June 17, 2011, advised her that Mr. Couvillion wished to convert his policy, and offered to pay

---

[5] Plaintiff submitted this letter to the court as an attachment to Plaintiff's Response to ERISA Case Order (Rec. Doc. 10-1). This document was not submitted by Defendants as part of the administrative record.

[6] Plaintiff submitted this form to the court as an attachment to Plaintiff's Response to ERISA Case Order (Rec. Doc. 10-2). This document was not submitted by Defendants as part of the administrative record.

[7] Complaint, ¶ 9.

the premium.[8]  Plaintiff further alleges that Ms. Leerkes advised her that Mr. Couvillion should apply for a premium waiver rather than pay a premium at that time.[9]

According to Plaintiff, MetLife received the application for premium waiver on July 11, 2011.[10]  Mr. Couvillion died of lung cancer the next day, July 12, 2011.  MetLife denied the request for the premium waiver on July 15, 2011 on the ground that Mr. Couvillion's disability commenced after the age of sixty.[11]  Then, on August 8, 2011, MetLife Transition Solutions sent a letter to Mr. Couvillion stating that it had been notified that his group life insurance benefits had changed effective June 5, 2011.[12]  Attached to the letter was a MetLife form entitled "Notice of Group Life Insurance Coverage Privilege," which provided deadlines for converting the policy.[13]

Plaintiff submitted her claim for life benefits to MetLife on August 10, 2011.[14]  MetLife denied Plaintiff's claim for coverage on October 11, 2011.[15]  After an appeal by Plaintiff, MetLife denied the claim against on November 3, 2011.[16]

Plaintiff filed this lawsuit on April 10, 2012.  The court issued an ERISA Case Order on October 19, 2012.[17]  The ERISA Case Order provided that absent a court order, "discovery in this case is limited to subject matter which relates to the administrator's interpretation of the

---

[8] Complaint, ¶ 10.
[9] Complaint, ¶ 11.
[10] Complaint, ¶ 14.
[11] Rec. Doc. 7-3, at 8-9 (M-0091 to M-0092).
[12] Rec. Doc. 7-3, at 82 (M-0165).  The address for MetLife Transition Solutions is in Tulsa, Oklahoma.  The exact institutional relationship between MetLife Transition Solutions and MetLife is unclear to the court.
[13] Rec. Doc. 7-3, at 83 (M-0166).
[14] Rec. Doc. 7-3, at 66-67 (M-0149 to M-150).
[15] Rec. Doc. 7-3, at 75-77 (M-0158 to M-0160).
[16] Rec. Doc. 7-3, at 89-91 (M-0172 to M-0174).
[17] Rec. Doc. 6.

policy or plan."[18]  It further provided that "[i]f a diligent review of the law and the facts leads a party to believe that there is a basis for expanding the scope of discovery in this case, an appropriate motion and memorandum, citing applicable authorities and legal arguments, should be filed promptly."[19]  Finally, the Case Order also provided that within 90 days of its issuance, the parties must file a "joint stipulation, dispositive motions, and/or statement of issues" addressing, among other things, "the completeness of the administrative record."

In response to the ERISA Case Order, Defendant submitted the 186-page administrative record.[20]  In her own response to the ERISA Case Order, Plaintiff asserted that several documents were missing from the administrative record.[21]  On March 15, 2013, Defendants moved for summary judgment.[22]  That same day, Plaintiff filed a motion to modify the ERISA Case Order and permit limited discovery.[23]  In her motion, Plaintiff made requests related to the same nine categories of information identified in her response to the Case Order: (1) to add the May 13, 2011 from Reddy Ice to Mr. Couvillion to the administrative record; (2) to add the May 13, 2011 conversion of benefits form to the administrative record; (3) to conduct discovery regarding premium payments made by Reddy Ice; (4) to conduct discovery regarding correspondence between Ms. Leerkes and other representatives of MetLife; (5) to take the deposition of Ms. Leerkes; (6) to conduct discovery regarding correspondence between Reddy Ice and MetLife Transition Solutions; (7) to conduct discovery regarding the claim and appeal of the July 15, 2011 premium waiver decision; (8) to conduct discovery regarding Reddy Ice's

---

[18] Rec. Doc. 6, at 3.
[19] Rec. Doc. 6, at 3 n. 1.
[20] Rec. Docs. 7-2 and 7-3 (M-0001 to M-0186).
[21] Rec. Doc. 10.
[22] Rec. Doc. 20.
[23] Rec. Doc. 18.

4

submissions during the appeals process; and (9) to replace certain pages of the administrative record with legible copies.

Defendants opposed Plaintiff's motion for limited discovery, arguing that the documents and other discovery sought by Plaintiff were not submitted to the claims administrator prior to the benefits determination and are otherwise not relevant to the benefits determination.[24] About one month after Defendants filed their motion for summary judgment, Plaintiff moved to permit limited discovery prior to the court deciding the pending motion for summary judgment.[25] Defendants also oppose that motion.[26]

## LAW & ANALYSIS

The general scope of discovery is broad and permits the discovery of "any nonprivileged matter that is relevant to any party's claim or defense." *Crosby v. Louisiana Health Serv. & Indem. Co.*, 647 F.3d 258, 262 (5th Cir. 2011) (quoting Fed. R. Civ. P. 26(b)(1)). Information is relevant, and therefore discoverable, when the requested "discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). Regulations pertaining to ERISA clarify that document, record, or other information shall be deemed "relevant" to a claim if it is "submitted, considered, or generated in the course of making the benefit determination, without regard to whether such document, record, or other information was relied upon in making the benefit determination[.]" 29 C.F.R. § 2560.503-1(m)(8).

ERISA provides federal courts with jurisdiction to review benefits determinations made by fiduciaries or plan administrators. *See* 29 U.S.C. § 1132(a)(1)(B). When considering a claim for benefits, the fiduciary or plan administrator has "the obligation to identify the evidence in the administrative record and the claimant must be afforded a reasonable opportunity to contest

---

[24] Rec. Doc. 21.
[25] Rec. Doc. 23.
[26] Rec. Doc. 24.

whether the record is complete." *Estate of Bratton v. National Union Fire Ins. Co. of Pittsburgh, PA*, 215 F.3d 516, 521 (5th Cir. 2000). A plaintiff can request that additional evidence be added to the administrative record prior to the fiduciary or plan administrator's consideration of that record. *Id*. "Thus, the administrative record consists of relevant information made available to the administrator prior to the complainant's filing of a lawsuit and in a manner that gives the administrator a fair opportunity to consider it." *Id.*

The Fifth Circuit has provided additional guidance on whether limited discovery should be allowed in an ERISA action. In *Crosby*, 647 F.3d 258, the court considered whether a magistrate judge's denial of requested discovery deprived the plaintiff of a meaningful opportunity to contest the completeness of the administrative record. Interpreting an earlier Fifth Circuit decision,[27] the court held that evidence is inadmissible in an ERISA action "to resolve the merits of the coverage determination—i.e. whether coverage should have been afforded under the plan—unless the evidence is in the administrative record, relates to how the administrator has interpreted the plan in the past, or would assist the court in understanding medical terms and procedures." *Id*. at 263. Accordingly, a claimant in an ERISA action is "not entitled to a second chance to produce evidence demonstrating that coverage should be afforded." *Id*.

However, the *Crosby* court also held that evidence is admissible "to resolve other questions that may be raised in an ERISA action" including (1) whether the administrative record submitted is complete, (2) whether the plan administrator complied with ERISA's procedural regulations, and (3) whether and to what extent there may be a conflict of interest created by a plan administrator's dual role in making benefits determinations and funding the plan. *Id*. The

---

[27] *Vega v. Nat'l Life Ins. Servs., Inc.*, 188 F.3d 287, 299-300 (5th Cir. 1999) (en banc), *overruled on other grounds by Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105 (2008), *as recognized by LifeCare Mgmt. Servs. LLC v. Ins. Mgmt. Adm'rs Inc*., 703 F.3d 835 (5th Cir. 2013).

*Crosby* court found that the submitted discovery requests sought evidence that would help resolve the three issues identified above. The court held that the denial of discovery by the magistrate judge was an abuse of discretion prejudicing the plaintiff's ability to demonstrate, among other things, that the administrative record compiled by the plan administrator contained all relevant information made available to it prior to the filing of the suit. *Id*. at 264. The court also cautioned courts to "monitor discovery closely" and "guard against abusive discovery" in ERISA actions. *Id*.

For ease of discussion, the court will narrow Plaintiff's nine discovery requests into the following five categories: (1) Plaintiff's request to supplement the administrative record with documents in Plaintiff's possession during the benefits determination process, but not submitted to MetLife;[28] (2) Plaintiff's request to conduct discovery to determine whether Reddy Ice submitted documents or other information to MetLife during and before the benefits determination process;[29] (3) Plaintiff's request to conduct discovery regarding documents and information related to Ms. Leerkes and MetLife Transition Solutions, including taking the deposition of Ms. Leerkes;[30] (4) Plaintiff's request to conduct discovery into the reasons behind the denial of the premium waiver request;[31] and (5) Plaintiff's request to have certain pages of the administrative record replaced with more legible copies.[32] The court will consider these categories in turn.

---

[28] *See* Plaintiff's discovery requests Nos. 1, 2 (Rec. Doc. 18-1, at 3-4).
[29] *See* Plaintiff's discovery requests Nos. 3, 8 (Rec. Doc. 18-1, at 4, 8-9).
[30] *See* Plaintiff's discovery requests Nos. 4, 5, 6 (Rec. Doc. 18-1, at 5-8).
[31] *See* Plaintiff's discovery requests No. 7 (Rec. Doc. 18-1, at 8).
[32] *See* Plaintiff's discovery requests No. 9 (Rec. Doc. 18-1, at 9).

1. **Plaintiff's request to supplement the administrative record with documents in Plaintiff's possession during the benefits determination process, but not submitted to MetLife.**

Plaintiff requests the court to supplement the administrative record with the May 13, 2011 letter from Reddy Ice to Mr. Couvillion and the attached form entitled "MetLife Conversion of Group Life Benefits to an Individual Policy Notice."[33] Plaintiff submitted these documents with her response to the court's ERISA Case Order. Defendants do not contend that these documents are in the administrative record. Instead, Defendants argue that there is no indication that the documents were ever provided to MetLife for consideration during the benefits determination process and, therefore, do not belong in the administrative record.

The court agrees with Defendants. These two documents were sent to Mr. Couvillion by a representative of Reddy Ice before the death of Mr. Couvillion, which necessarily occurred before the benefits determination process began. There is no indication in the record that the documents were submitted to MetLife by either Reddy Ice or Plaintiff prior to the completion of the benefits determination process. That limited discovery may be appropriate to determine *whether* the administrative record is complete does not mean that claimants may supplement the administrative record with documents not submitted during the benefits determination process. *See Crosby*, 647 F.3d at 263.

Plaintiff had an opportunity to provide these documents to MetLife during the benefit determination process. Plaintiff has not indicated that this was done. "A plan participant is not

---

[33] Plaintiff also requested the court to supplement the administrative record with the July 15, 2011 letter denying Mr. Couvillion's request for a premium waiver. Defendant has pointed out that the document is already in the administrative record at Rec. Doc. 7-3, at 8-9 (M-0091 to M-0092).

8

entitled to a second chance to produce evidence demonstrating that coverage should be afforded." *Id*. Accordingly, the letter and form will not be added to the administrative record.[34]

### 2. Plaintiff's request to conduct discovery to determine whether Reddy Ice submitted documents or other information to MetLife during and before the benefits determination process.

Plaintiff requests the court to allow it to conduct discovery related to (i) alleged submissions of documents and information by Reddy Ice to MetLife during the benefits determination process and (ii) the alleged submission of a premium payment to cover the period of June 5, 2011 to June 30, 2011.

First, the court will allow Plaintiff to conduct limited written discovery into whether Reddy Ice submitted to MetLife any additional relevant information during the benefits determination process that is not currently part of the administrative record as submitted by Defendants. A document in the administrative record suggests that on or after September 6, 2011, MetLife contacted Reddy Ice for additional information related to the termination of Mr. Couvillion's employment.[35] Defendants indicate that at least some "information" obtained from Reddy Ice in connection with Plaintiff's appeal is in the administrative record, but they do not provide that *all* relevant documents and information submitted by Reddy Ice was included in the administrative record.[36] Thus, the limited discovery requested by Plaintiffs goes to the issue of whether the administrative record is complete.

---

[34] Of course, should Plaintiff discover that MetLife had these documents in their possession during the benefits determination process, then those documents would be appropriately considered part of the administrative record as a matter of law. *See French v. Dade Behring Life Ins. Plan*, 2011 WL 5599186, at *3 (M.D. La. Nov. 17, 2011) (concluding that the claims administrator's file was part of the administrative record as a matter of law).
[35] Rec. Doc. 7-3, at 71 (M-0154).
[36] Rec. Doc. 21, at 9.

9

Second, the court will allow Plaintiff to conduct limited written discovery into whether Reddy Ice submitted any additional premium payment to extend coverage through June 30, 2011. Defendants do not deny that any such premium payment was made; instead, they argue that Reddy Ice's premium payments were "never reviewed" and otherwise "not relevant" to the Plan's decision.[37] If the premium payment was submitted during the benefits determination period, however, then it would be deemed relevant under the pertinent regulations. *See* 29 C.F.R. § 2560.503-1(m)(8)(ii). Thus, Plaintiff is entitled to discovery to determine whether any such premium payment was made for the purpose of extending Mr. Couvillion's life insurance coverage through June 30, 2011.[38]

Although the court will allow limited written discovery into these two topics, such discovery must be strictly limited to determining whether the administrative record is complete.

### 3. Plaintiff's request to conduct discovery regarding documents and information related to Ms. Leerkes and MetLife Transition Solutions, including taking the deposition of Ms. Leerkes.

Plaintiff also requests discovery regarding documents and information related to Ms. Leerkes and MetLife Transition Solutions, including taking the deposition of Ms. Leerkes.

The court will allow Plaintiff to conduct limited written discovery regarding relevant documents and information generated by Ms. Leerkes and MetLife Transition Solutions, including documents in the possession of MetLife memorializing communications between it and Ms. Leerkes and MetLife Transition Solutions. On October 18, 2011, Plaintiff submitted a letter to MetLife providing, among other things, an August 8, 2011 letter from MetLife Transition Solutions in Tulsa, Oklahoma, notifying Mr. Couvillion (who was deceased at the

---

[37] Rec. Doc. 21, at 8.
[38] In allowing this limited discovery, the court is not determining whether any such payments by Reddy Ice would have the legal effect of extending coverage on Mr. Couvillion's life insurance policy beyond the termination of his employment.

10

time) of his "Group Life Insurance Conversion Privilege."[39]  Elsewhere in the administrative record, a MetLife representative documented an incoming call from a "Met Sales Agent" named "Bonnie," noting that "she spoke to Transition Solutions who handles converting [coverage] and they advised that [the employee] was covered [through] August" and that she would provide additional information.[40]  The administrative record is unclear at best regarding the roles of Mrs. Leerkes and MetLife Transition Solutions in the benefits determination process.

Defendant argues that "information in Ms. Leerkes' file and any statements made by her relative to communications with Transition Solutions—and the Transition Solutions Conversion Notice—are not relevant to the claims determination because they occurred after the death of Mr. Couvillion."[41]  The court rejects this argument because, under the pertinent regulations, documents and other information are deemed relevant if "submitted, considered, or *generated in the course of making the benefit determination*. . . ." 29 C.F.R. § 2560.503-1(m)(8)(ii) (emphasis added).  Mr. Couvillion's death on July 12, 2011 is not the appropriate cut-off date for the generation of relevant information within the control of MetLife.  The benefit determination period ran through at least November 3, 2011, when MetLife issued its final decision on appeal.

The court will not, however, allow the deposition of Ms. Leerkes.  Plaintiff has not convinced the court that a deposition is needed to determine whether the administrative record is complete.  Resolution of that issue can be made through written discovery.  Indeed, Plaintiff argues that although it is "unusual to conduct discovery in an administrative appeal, the deposition of Leerkes is the only way for Plaintiff to present complete evidence of the events that

---

[39] Rec. Doc. 7-3, at 78-83 (M-0161 to M-0166).
[40] Rec. Doc. 7-3, at 101 (M-0184).
[41] Rec. Doc. 21, at 8.

11

occurred leading up to the filing of the improper form."[42] The scope of information sought by Plaintiff through deposition exceeds the limits of allowable discovery of evidence into whether the administrative record is complete.  In this case, Plaintiff can obtain information needed to determine the completeness of the administrative record through written discovery.  *See Crawford v. Hartford Life & Acc. Ins. Co.*, 2011 WL 5237826 (S.D. Miss. Nov. 1, 2011) (denying motion to compel Rule 30(b)(6) deposition in ERISA case where Plaintiff failed to demonstrate that relevant information could not be obtained through less burdensome and costly written discovery).[43]

### 4. Plaintiff's request to conduct discovery into the reasons behind the denial of the premium waiver request.

Plaintiff also requests discovery regarding documents and information related to the denial of Mr. Couvillion's premium waiver request.  Plaintiff claims that a letter dated July 15, 2011 and other information related to the claim and appeal do not appear in the administrative record.

Plaintiff is in error.  The July 15, 2011 letter is already part of the administrative record.[44]  As noted by the defendants, additional documents related to the denial and the appeal of the premium waiver claim are also part of the administrative record.[45]  Contrary to the plaintiff's assertion, it does not appear that the administrative record is insufficient as to this matter.

---

[42] Rec. Doc. 18-1, at 7.
[43] The court notes that depositions may be an appropriate tool for discovery in certain ERISA actions. *See*, *e.g.*, *Carroll v. United of Omaha Life Ins. Co.*, 378 F. Supp. 2d 741, 746 (E.D. La. 2005) (considering as evidence deposition testimony submitted on motion for summary judgment to show the defendant's interpretation of an ERISA plan was erroneous and constituted an abuse of discretion).
[44] Rec. Doc. 7-3, at 8-9 (M-0091 to M-0092).
[45] Rec. Doc. 7-2, at 81-83 and rec. Doc. 7-3, at 1-2 (M-0081 to M-0095).

Accordingly, the court will deny Plaintiff's request to discover "notes, e-mails, and other information related to the claim and appeal" for the premium waiver.

### 5. Plaintiff's request to have certain pages of the administrative record replaced with more legible copies.

Finally, Plaintiff requests for legible copies of certain pages of the administrative record. Upon review of the administrative record as filed by Defendants, it appears that Plaintiff is referring to pages printed from a computer database with "Senior Referral Form" in the upper-right hand corner of the pages.[46]

The court agrees with Plaintiff that these pages of the administrative record, as submitted by Defendants, are difficult to read. The court will, therefore, order Defendants to produce to Plaintiffs, if possible, legible and complete copies of these pages of the administrative record within the discovery deadline set by this Order.

## CONCLUSION

Accordingly **IT IS ORDERED** that Plaintiff's Motion to Modify ERISA Case Order to Permit Limited Discovery (Rec. Doc. 18) is **GRANTED in part** and **DENIED in part**. Plaintiff shall have until July 26, 2013, to request the limited discovery outlined in this Order. Defendant shall respond no later than August 26, 2013.

Signed in Baton Rouge, Louisiana, on July 11, 2013.

*[signature]*

**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**

---

[46] *See* Rec. Doc. 7-3, at 69, 72, 86, 87, and 88 (M-1052, M-0155, M-0169, M-0170, and M-0171).